# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHARLES F. SHADE,

    *Plaintiff*,

v.                                                                          CASE NO. 2:14-cv-12629

CAROLYN W. COLVIN                          DISTRICT JUDGE ROBERT H. CLELAND
Commissioner of Social Security,            MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Title II of the Social Security Act 42 U.S.C. § 401-34. The matter is currently before the Court on cross-motions for summary judgment. (Docs. 19, 21.)

Plaintiff Charles Shade was 40 years old at the time of the most recent administrative hearing (Transcript, Doc. 11 at 49,) and 38 years old at the time he applied for benefits. (Tr. at 115.) He alleges his disability began on October 8, 2010. (*Id.*) Plaintiff's work history includes jobs as a forklift truck driver for two years, a material handler for four years, and a freight unloader for one and one-half years. (Tr. at 128.) At the initial administrative stage, the Commissioner considered back disorders, discogenic and degenerative, and denied his claims. (Tr. at 78.) Plaintiff asked for a hearing in front of an Administrative Law Judge ("ALJ"), who would consider the application de novo. (Tr. at 83.)

ALJ Christopher Ambrose convened the hearing on June 7, 2012. (Tr. at 40-68.) In his decision dated August 2, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 25-39.) The ALJ's decision became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 31, 2014, when, after review of additional exhibits[2] (Tr. at 289-365,) the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On July 3, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.     Standard of Review**

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

The Social Security system has a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "[T]he . . . standard is met if a 'reasonable mind

4

might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C. Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *Accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-85. Title II

5

benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474. *See also Cruse*, 502 F.3d at 540. The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since October 8, 2010, the alleged onset date, and met the insured status requirements through December 31, 2015. (Tr. at 30.) At step two, the ALJ concluded that Plaintiff had the following severe impairment: "mild stenosis of the lumbar spine." (Tr. at 30-31.) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. at 32.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, as defined in the regulations, 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. at 32-34.) At step four, the ALJ found that Plaintiff was able to perform past

relevant work as a forklift operator. (Tr. at 34-35.) At step five, the ALJ found that a significant number of jobs existed suitable to Plaintiff's limitations. (Tr. at 35.)

  **E. Administrative Record**

  **1. Medical Records**

Plaintiff complained of lower back pain since October 8, 2010, when he experienced a work-related injury while unloading a semi truck. (Tr. at 190, 300.) Plaintiff returned to the emergency room on October 15, 2010, December 14, 2010, January 8, 2011, and February 22, 2011, but all systems reviewed were normal. (Tr. at 197-226.)

An ultrasound of Plaintiff's left lower extremity was taken on October 15, 2010, but it was "negative for deep venous thrombosis." (Tr. at 227.)

An MRI dated October 22, 2010, showed "mild relative central canal stenosis and a mild degree of neural foraminal narrowing is seen diffusely throughout the lumbar spine, felt to be primarily congenital in nature on the basis of short pedicles, no focal disc herniation or nerve root compromise is identified." (Tr. at 170.) In addition, the MRI showed "mild degenerative marginal spurring of the bilateral sacroiliac joints." (*Id.*) Plaintiff was discharged from physical therapy on November 4, 2010, because Plaintiff "has NOT been able to tolerate PT." (Tr. at 174 (emphasis in original).)

Plaintiff was evaluated by Dr. Reuben Henderson on April 29, 2011. (Tr. at 233-37.) Dr. Henderson noted that Plaintiff complained of low back pain and numbness in his left leg and that "his pain is considered to be severe relative to the minimal MRI findings of pathology." (Tr. at 233.) However, Dr. Henderson also indicated that Plaintiff was to remain off work until September

29, 2011. (Tr. at 244.) Plaintiff continued to visit Dr. Henderson and was noted to be weak, in pain, and to have an antalgic gait. (Tr. at 245-83.)

### 2. Administrative Hearing

Plaintiff attended an administrative hearing on June 7, 2012. (Tr. at 40-68.) Plaintiff was not represented by an attorney as he had asked attorneys at Davidson, Breen, and Doud to represent him but they told him "you can just go in." (Tr. at 58-59.) Plaintiff appeared using a walker but the ALJ noted that in April of 2011, Dr. O'Connor recommended that Plaintiff "discontinu[e] his walker within a month of starting therapy, and then discontinu[e] all assistive devices. I don't see a reason for him to use those devices." (Tr. at 54.) Plaintiff responded that a different doctor, Dr. Henderson, recommended that he use the walker. (Tr. at 54-55.) Plaintiff stated that physical therapy "didn't do nothing for me. No. As a matter of fact, it aggravated it." (Tr. at 56.) Plaintiff testified that he doesn't do much but he did drive himself to the hearing. (Tr. at 61-62.) Plaintiff has two ten year-old twin sons and four adult daughters. (Tr. at 62.) Plaintiff watches television, reads his bible, attends church once a week, and makes sandwiches for himself. (Tr. at 63.) Plaintiff testified that he can't work because of pain and that back pain is "primarily the issue." (Tr. at 64-65.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintif's background who "would be able to work at the light exertional level. Only occasional ladders, ropes or scaffolds. Only occasional crawling."(Tr. at 66.) The VE indicated that such a person could perform the following light, unskilled jobs that are available in the lower peninsula of Michigan: 43,341 fast food preparation, 9402 hand packer, and 33,494 cashier jobs. (Tr. at 67.)

9

F.   **Analysis and Conclusions**

1.   **Legal Standards**

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work. (Tr. at 32-34.) Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

2.   **Substantial Evidence**

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence could justify the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff has three complaints with the ALJ's findings. (Doc. 18.) First, he says he met or equaled one of the Listings under 1.00, "although plaintiff did not make an argument at the hearing that his condition met and/or equaled a Listed Impairment, this should not be held against him, as

10

he was unrepresented." (*Id.* at 19-20.) The listings, set out in an appendix to the regulations, detail particular impairments the Commissioner "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a), 416.925(a). Listing 1.04A deals with spinal disorders evidenced by nerve root compression. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. Plaintiff points out that the ALJ never explicitly analyzed that listing, instead simply asserting he had considered the criteria of Listing 1.00, and others. (Doc. 19 at 19 (citing Tr. at 32).) She then explains that testing verified central canal stenosis, even though it was categorized as mild. (Doc. 19 at 22.)

Defendant responds that the ALJ did consider the listing and that Plaintiff could not meet the burden because there is no medical opinion supporting a claim that he meets or equals the listing and the only physician to have addressed whether Plaintiff could meet the listing, Dr. Kuiper, concluded that he did not. (Doc. 21 at 8.) Defendant also notes that Plaintiff's claim is fatally flawed since there was no evidence of compromise to a nerve root in any of the MRIs taken of Plaintiff's spine. (Doc. 21 at 9.)

Second, Plaintiff contends that the case should be remanded under sentence six for the ALJ to evaluate the new and material evidence submitted to the Appeals Council by Plaintiff. (Doc. 18 at 25-28.) Finally, Plaintiff contends that the ALJ erred in concluding that Plaintiff is capable of performing substantial gainful activity. (Doc. 18 at 28-31.)

### a. Listing 1.04A

Claimants with severe impairments that meet or equal a listing in the Appendix are deemed disabled without further analysis. 20 C.F.R. § 404.1520(a)(4)(iii). Fitting a claimant into a listing is dispositive and thus demands a higher level of proof: listed impairments preclude any gainful

activity, not just substantial gainful activity. *See Zebley*, 493 U.S. at 525; 20 C.F.R. pt. 404, subpt. P, App. 1. Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). A claimant must satisfy all of the criteria to meet the listing. *Id.; see also Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Alternatively, medical equivalence of a Listing can occur in three situations where the claimant fails to meet all of the criteria:

> (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is at least of equal medical significance" to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality.

*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 n.2 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1526).

The ALJ retains discretion at this stage, and does not need to attach "any special significance to the source of a[] [medical] opinion . . . [regarding] whether an impairment meets or equals a listing." 20 C.F.R. § 404.1527(d)(3). This is particularly true for the first part of the analysis: "'[A]n ALJ is capable of reviewing records to determine whether a claimant's ailments *meet* the Listings . . . .'" *Stratton v. Astrue*, 987 F. Supp.2d 135, 148 (D. N.H. 2012) (quoting *Galloway v. Astrue*, No. H-07-01646, 2008 WL 8053508, at *5 (S.D. Tex. May 23, 2008)). The Commissioner, however, has qualified the ALJ's discretion to decide equivalence, noting that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3. An expert's opinion in a Disability

Determination Transmittal Form can satisfy this requirement. *Hayes v. Comm'r of Soc. Sec.*, No. 11-14596, 2013 WL 766180, at *9 (E.D. Mich. Feb. 4, 2014), *Report & Recommendation adopted*, 2013 WL 773017 (E.D. Mich. Feb. 28, 2013).

The ALJ's step-three explanation is held to the same standard as the rest of the decision, and the ALJ does not need to "spell[] out every consideration that went into the step three determination" or recount every fact discussed elsewhere in the decision. *Bledsoe v. Barnhart*, 165 F. A'ppx 408, 411 (6th Cir. 2006). The ALJ does not need to use a particular format, and reviewing courts will read the decision "as a whole . . . to ensure there is sufficient development of the record and explanation . . . ." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (noting that the ALJ does not need "to use particular language or adhere to a particular format in conducting his analysis"). Nor does the ALJ need to place the entire analysis underneath the "Listing" heading; the court can examine the ALJ's entire decision to decide whether the step three analysis is adequate. *See White v. Colvin*, No. 4:12-cv-11600, 2013 WL 5212629, at *7 (E.D. Mich. Sept. 16, 2013) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). The claimant carries the burden of proof at step three and therefore, as the Third Circuit has observed, the ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that she meets the Listing. *Ballardo v. Barnhart*, 68 F. App'x 337, 339 (3d Cir. 2003) (finding that a conclusory, single-sentence analysis was adequate where the claimant "presented essentially no medical evidence of a severe impairment").

In *Retka v. Commissioner of Social Security*, decided before SSR 96-6p was issued, the Sixth Circuit's analysis somewhat adumbrated *Ballardo*. 70 F.3d 1272, 1995 WL 697215, at *2 (6th Cir. 1995) (unpublished table decision). The Sixth Circuit noted the need for expert opinions

on equivalence, but quickly shifted the focus to the "claimant's burden . . . to bring forth evidence to establish that he or she meets or equals a listed impairment." *Id.* The ALJ had scoured the record, found that the plaintiff had produced no evidence supporting disabling pain, and thus the Court rejected the attack on the decision. *Id.* "The absence in the record of medical evidence showing significant neurological deficits and muscle atrophy supports the ALJ's conclusion . . . . [And] [t]hus, there is no merit to the plaintiff's argument that the ALJ erred in failing to find his condition equivalent to the Listing . . . ." *Id.* I suggest that the same analysis applies here. The ALJ was not presented with any evidence supporting disabling pain or showing significant neurologial deficits or muscle atrophy. Dr. Henderson was somewhat puzzled by Plaintiff's alleged severe pain because it did not match the "minimal MRI findings of pathology." (Tr. at 233.) I further note that although 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 requires a showing of nerve root compromise, the MRI concluded that "no focal disc herniation or nerve root compromise is identified." (Tr. at 170.) I therefore suggest that the ALJ did not err in failing to find Plaintiff's condition equivalent to a Listing. *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709 (E.D. Mich. 2011) (finding that "none of the medical records expressly state that plaintiff suffers from nerve root compression. An implication, based on radiating pain, is not enough to satisfy the Listing [1.04]").

      **b.**    **Sentence Six Remand**

Plaintiff seeks a sentence six remand to present the records that Plaintiff submitted to the Appeals Council to the ALJ. (Doc. 18 at 25-28.) These records consist of medical records from Dr. Henderson dated October 22, 2010 through July 2, 2012 (Tr. at 289-312), and medical records from Michigan Spine and Brain Surgeons dated February 13, 2012 through August 2, 2012 (Tr.

14

at 313-65), and August 2012 through May 10, 2013. (Tr. at 12-22.) Plaintiff argues that "the evidence presented is both new and material" and does not specifically point to any evidence except for a "new MRI [which] did not take place until August 10, 2012, eight days after the hearing decision was written." (Doc. 18 at 26.)

Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, most of the evidence submitted to the Appeals Council was available at the time of the hearing, i.e., by June 7, 2012, so most of the evidence was not new in the sense that

15

it was not in existence at the time of the hearing. The remaining evidence, even if it is new, is not material, I suggest. As indicated above, material evidence must be so significant that there is a reasonable probability that it would change the disposition of the case. Here, the MRI results in August 2012 were described as showing a "mild disc bulge from L4 to S1" but "no evidence of nerve impingement." (Tr. at 21.) This does not show such a significant change as to turn the tide for Plaintiff's case.

Dr. Soo's treatment does not provide a basis for materiality either. On February 13, 2012, Dr. Soo, of Michigan Spine and Brain Surgeons commented that he was "unsure of why the patient is experiencing such significant pain" since his MRI "demonstrated no disc herniation and no nerve compression" and was "unremarkable" and because he had reviewed the "x-rays of the lumbar spine performed in my office on 2/13/12" and "[t]hey demonstrated no dynamic instability." (Tr. at 318.) Although Plaintiff underwent a surgical lumbar laminectomy and fusion with Dr. Soo in November 2012, Dr. Soo was reluctant to do so and expressed that he "encouraged the patient to continue with conservative management and reserve surgery as a treatment of last resort; however, the patient would like to proceed with surgery." (Tr. at 21-22.) I suggest that none of this evidence suggests a material change in Plaintiff's condition that would justify a sentence six remand.

      **c.**    **Substantial Gainful Activity**

Here, Plaintiff argues that the ALJ erred in finding him capable of substantial gainful activity. (Doc. 18 at 28-31.) Plaintiff contends that the ALJ did not have a basis for asking the VE about a person who could stay on task for 30% of the work day. (Doc. 18 at 30.) I note that the VE's answer to this question was not relied upon by the ALJ in finding that Plaintiff could perform

16

any work because the VE responded that a person off-task for 30% of the time would not be able to perform any competitive work. (Tr. at 67.) Therefore, this 30% question was completely irrelevant to the ALJ's findings and provides no basis for undermining the ALJ's decision.

To the extent that Plaintiff challenges overall residual functional capacity ("RFC"), I suggest that the ALJ's decision is supported by substantial evidence. The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most [she] can still do despite [her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The Plaintiff bears the burden of proof during the first four stages of analysis, including proving her RFC. *Jones*, 336 F.3d at 474; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). At step five, the Commissioner does not have add anything to the RFC, 20 C.F.R. § 404.1560(c), and consequently the burden to prove limitations remains with the Plaintiff at this stage. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 538 (6th Cir. 2002); *DeVoll v. Comm'r of Soc. Sec.*, 234 F.3d 1267, 2000 WL 1529803, at *3 (6th Cir. 2000) (unpublished table decision); *Her*, 203 F.3d at 391-92. The hypothetical is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009). I suggest that there is no evidence in the record that would support a finding of disability and thus, that the ALJ's RFC findings are properly supported by substantial evidence.

    **3.    Conclusion**

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 7, 2015       S/ Patricia T. Morris
                        Patricia T. Morris
                        United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 7, 2015       By s/Kristen Krawczyk
                        Case Manager to Magistrate Judge Morris

19